**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

|  |  |
|---|---|
| Todd B., <br><br> *Plaintiff*, <br><br> v. <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br> *Defendant*. | Case No. 3:25-cv-50095 <br><br> Honorable Michael F. Iasparro |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Todd B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his applications for a period of disability and disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

Plaintiff filed an application for a period of disability and disability insurance benefits alleging a disability onset date of November 13, 2020. R. 248. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on February 7, 2024, finding that Plaintiff is not disabled. R. 18-32. The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> occasionally push/pull with the right lower extremity; frequently push/pull with the left lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl; no exposure to unprotected heights; occasional exposure to moving mechanical parts; occasional exposure to humidity, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat; occasional exposure to vibration; and exposure to no more than a moderate level of noise.

R. 24. The ALJ found that Plaintiff is unable to perform past relevant work but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 30-32.

The Appeals Council denied Plaintiff's request for review on February 6, 2025, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 7.

1

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision based on alleged flaws in the ALJ's consideration of (1) Plaintiff's subjective symptoms, (2) Plaintiff's adjustment disorder, and (3) Plaintiff's obesity. Dkt. 13. As explained in further detail below, the Court does not find that any of these alleged errors warrant remand.

Initially, the Court notes that Plaintiff fails to draw attention to any line of contrary evidence ignored by the ALJ or any medical opinion providing greater limitations than those included in the ALJ's RFC determination. Nor does Plaintiff propose any restrictions that should have been included in the RFC. These shortcomings alone are fatal to Plaintiff's motion. *See Thorlton*, 127 F.4th at 1082 ("In short, this is not a case where the ALJ presented a 'skewed version of the evidence,' or failed to 'minimally discuss' contrary evidence, so reversal is not warranted on this ground." (citations omitted)); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kind of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."). Nonetheless, the Court will address each of Plaintiff's arguments in turn.

1) Subjective Symptoms

Plaintiff first takes issue with the ALJ's evaluation of his subjective symptoms, contending that the ALJ failed to provide sufficient reasoning for his ultimate conclusion that Plaintiff's symptoms are not as limiting as alleged. Dkt. 13, at 8. The Court "will overturn the ALJ's

2

evaluation of a claimant's subjective symptoms only if it is 'patently wrong, which means that the decision lacks any explanation or support.'" *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025) (quoting *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024)). The ALJ's evaluation in this case is not patently wrong.

The relevant regulations outline seven factors for ALJs to consider in their evaluation of a claimant's subjective complaints: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment other than medication; (6) personal measures taken to relieve symptoms; and (7) other relevant factors. 20 C.F.R. § 404.1529(c)(3). Although not required to do so, the ALJ addressed every single one of these factors in his opinion. *See Gedatus v. Saul*, 994 F.3d at 903 ("[A]n ALJ need not discuss every detail related to every factor."); *Schrank v. Saul*, 843 Fed. App'x 786, 789 (7th Cir. 2021) (unpublished) ("[W]e would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.")

The ALJ made note of Plaintiff's activities of daily living (e.g., making lunch for his wife and doing puzzles) while also recognizing the activities Plaintiff reported being unable to do (e.g., grocery shopping and mowing the lawn). R. 26. The ALJ also addressed the second factor by, for example, recognizing that Plaintiff "rated his pain between '7-8' on a 10-point scale" and "can walk approximately five-hundred feet" before needing to rest. R. 25-26. The ALJ recognized (and accounted for) Plaintiff's reports that humidity aggravated his breathing problems and that his knee pain was particularly severe on a slope. R. 25-26. The ALJ also recognized the type and effectiveness of Plaintiff's medications (e.g. Aleve, ibuprofen, and Singulair), other treatments (e.g. injections and physical therapy), and Plaintiff's own symptom-relieving measures (e.g. cold packs, baths, and a cane). R. 25-27. Thus, the Court finds that the ALJ has "said enough here to support [his] decision and permit meaningful appellate review" which is all that is required to meet "the most minimal of articulation requirements" to which the ALJ is subject.[2] *Thorlton*, 127 F.4th at 1083 (quoting *Warnell*, 97 F.4th at 1053).

Plaintiff acknowledges only the ALJ's consideration of Plaintiff's ability to work in the garage. Dkt. 13, at 10. Plaintiff takes issue with the ALJ's wording here and suggests that the ALJ impermissibly equated this "work" in the garage with the ability to perform full-time work. *Id.* The Court understands Plaintiff's worry about the ALJ's use of the term "work," but the ALJ is not equating this ability to work in the garage with an ability to work full-time. Rather, the ALJ recognized that "despite his pains," Plaintiff was able to work (or tinker, as the ALJ called it earlier in his opinion) in the garage and considered that information in crafting his RFC. R. 21, 26. This is exactly the sort of evidence the ALJ is instructed by the agency regulations to consider. *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). And even if the ALJ had erred in this respect, his

---

[2] And if Plaintiff means to suggest that the ALJ was required to provide specific support for each individual limitation in the RFC determination or an in-depth explanation of what parts of Plaintiff's testimony he found to be incredible, the Court makes clear that neither is true. *See Warnell*, 97 F.4th at 1053 ("An ALJ need not . . . cite support for every proposition or chain of reasoning."); *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("an ALJ's credibility findings need not specify which statements were not credible")

analysis of enough of the other factors "withstand scrutiny to support his decision." *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

Plaintiff also argues that "the ALJ appeared to play doctor and select aspects of each opinion depending on whether they would be consistent with a finding of 'light' rather than 'sedentary' work." Dkt. 13, at 9 (quoting R. 29-30). It is true that the ALJ cannot "highlight[] facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). Nor can the ALJ play doctor by "reach[ing] his own independent *medical* conclusion." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (emphasis added). But crafting an RFC is not a medical conclusion. *See John S. v. Bisignano*, No. 23 C 2041, 2025 WL 1505405, at *3 (N.D. Ill. May 27, 2025) ("[T]he RFC determination 'is a legal – and not a medical – decision that is exclusively within the ALJ's authority to make.'" (citation omitted)). And Plaintiff has not pointed to any evidence that the ALJ ignored. The ALJ did select different portions of the consultants' opinions (and added additional restrictions), but that is precisely what the ALJ is tasked with doing. *See Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). Notably, the consultant on reconsideration did not, as Plaintiff alleges, "endorse restrictions that were more consistent with sedentary rather than light work." Dkt. 13, at 9. In fact, the consultant on reconsideration (who assessed the more restrictive RFC of the two consultants) found Plaintiff capable of light work and made that finding even more clear by explicitly limiting Plaintiff to occasionally lifting twenty pounds and frequently lifting ten pounds. R. 148; *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

Most importantly, the ALJ found that the consultants' assessments were not "sufficient to account for [Plaintiff's] overall status" as several of Plaintiff's impairments "call for additional precautions." R. 29. For example, the ALJ recognized that the consultants' balance limitations did not adequately address the problems created by Plaintiff's knee pain and obesity (which will be discussed more fully below). R. 29. Accordingly, the ALJ found that Plaintiff can only occasionally balance despite the consultants finding that a lesser restriction on balancing would be adequate. R. 29. Ultimately, the ALJ's "RFC determination was more restrictive[3] than what any state agency physician recommended—demonstrating the ALJ's careful deliberation." *Padua v. Bisignano*, 145 F.4th 784, 792 (7th Cir. 2025); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The Court will not overturn this well-reasoned decision.

Alternatively, Plaintiff asserts that "there is nothing in the decision to explain how Plaintiff . . . would be able to walk and stand for six hours in a workday and sustain various postures for at least 30 per cent of the time." Dkt. 13, at 9-10. But it is not the ALJ's burden to prove what Plaintiff can do; it is Plaintiff's burden to show how his medically determinable impairments cause

---

[3] The Court does note that the state agency consultants rated Plaintiff's environmental limitations with terms that are not defined in any relevant policies or regulations (e.g. "avoid concentrated exposure") while the ALJ used more familiar, well-defined rating language (e.g. "occasional exposure"). There does not appear to be any consensus across the courts as to whether these are equivalent ratings. *See Renee S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-5522-DWC, 2021 WL 12177933, at *2 (W.D. Wash. Oct. 12, 2021). However, this distinction is ultimately inconsequential here as each of the representative jobs involve no exposure to any of the environmental limitations that the ALJ translated in this way.

limitations that render him disabled. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It was Summers's burden, not the ALJ's, to prove that she was disabled."). Thus, the question is not whether the ALJ pointed to evidence showing that Plaintiff *can* walk and stand for six hours in a workday and sustain various postures for at least 30 percent of the time but whether Plaintiff has provided evidence that he cannot. He has not.[4]

  2) Adjustment Disorder

Plaintiff then argues that the ALJ inadequately considered Plaintiff's adjustment disorder which the ALJ found to be non-severe. Dkt. 13, at 11. Specifically, Plaintiff asserts that the ALJ "did not address Plaintiff's mental impairments at all . . . for purposes of assessing RFC" and failed to account for the extent to which those impairments were complicated by pain and obesity. Dkt. 13, at 11-12. This is simply untrue. In the RFC analysis, the ALJ recognized that Plaintiff's "adjustment disorder is medically determinable" but found that it causes only a "mild deficit for concentration, persisten[ce], maintaining pace *when considering complicating factors* including obesity and chronic pain.[5]" R. 30 (emphasis added).

Plaintiff also takes issue with the ALJ's apparent failure to assess any restrictions to account for this mild limitation. Dkt. 13, at 12. To Plaintiff's point, the ALJ could have been clearer by specifically stating that no RFC restrictions were needed to accommodate Plaintiff's mental impairments despite this mild limitation. However, the ALJ found that Plaintiff's mild limitation in concentration, persistence, and pace stemmed from an exasperation of Plaintiff's adjustment disorder caused by his obesity and chronic pain which the ALJ did address in the RFC determination. *See Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (finding that an RFC addressing the underlying causes of a CPP limitation "incorporated all of [Plaintiff's] credible limitations"). Moreover, Plaintiff fails to provide reference to evidence suggesting that any restrictions are needed to address this mild limitation, nor does Plaintiff hypothesize as to what such a restriction might be. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (affirming the Commissioner's decision where the claimant failed to "explain how the RFC determination should have been different"). Thus, "there are no evidence-based restrictions that the ALJ could include in a revised RFC finding" to further account for this mild limitation. *Jozefyk*, 923 F.3d at 498.

---

[4] Plaintiff briefly draws attention to the ALJ's lack of discussion about the third-party report provided by Plaintiff's brother. Dkt. 13, at 11. However, as discussed above, the ALJ properly analyzed Plaintiff's subjective symptoms and was not required to "rehash every detail" in reference to Plaintiff's brother's statements that, by Plaintiff's own admission, were consistent with his own. *Gedatus*, 994 F.3d at 903; *see also Kenlee F. v. Colvin*, No. 3:21-cv-50355, 2025 WL 92589, at *6 (N.D. Ill. 2025).

[5] Plaintiff seems to read this statement to mean that the ALJ believes that Plaintiff has a mild limitation in concentration, persistence, and pace from his adjustment disorder alone and that the complicating factors make this limitation more severe. Dkt. 13, at 12. However, the Court reads this statement as the ALJ finding that Plaintiff's combination of impairments creates no more than a mild limitation in this area of mental functioning. This is supported by the ALJ's step two analysis in which the ALJ similarly held that Plaintiff "has mild limitation in concentrating, persisting or maintaining pace considering his reported depression and anxiety due to adjustment disorder *as well as complicating factors such as pain and obesity*." R. 22 (emphasis added).

Similarly, Plaintiff suggests that Plaintiff's physical impairments "would affect his ability to sustain the on-task and attendance requirements of full-time work." Dkt. 13, at 12. However, Plaintiff does not cite any evidence in the record suggesting that his physical impairments would cause him to be off task or miss time at work. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("[A]n ALJ need only include limitations that are supported by the medical record."); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (explaining that the ALJ did not need to address absenteeism when no doctor commented on claimant's ability to attend work regularly). Ultimately, Plaintiff has failed to "demonstrate with references to evidence why the ALJ's determinations [about Plaintiff's mental limitations] lack substantial support in the administrative record." *Morales*, 103 F.4th at 471.

3) Obesity

Finally, Plaintiff argues that the ALJ failed to analyze the impact of his obesity beyond a boilerplate statement that it was considered. Plaintiff "is right that mere boilerplate cannot support an ALJ's decision." *Gedatus*, 994 F.3d at 900. However, "[t]he use of boilerplate is innocuous when, as here, the language is followed by an explanation." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). The ALJ did provide boilerplate language about the possible impacts of obesity but, despite Plaintiff's contention to the contrary, the ALJ then went on to provide further explanation of the specific impacts of Plaintiff's obesity. The ALJ recognized that the state agency consultants' RFC determinations were not sufficient to account for the impact of Plaintiff's obesity which lead him to find in relevant part:

> [D]ue to [Plaintiff's] obesity and neuropathy from diabetes, he should not climb ladders, ropes, scaffolds, and should avoid unprotected heights. In this regard, Dr. Hinchen's opinion is more persuasive albeit not sufficient for safety concerns due to obesity in context of neuropathy and knee problems. Regarding balance, the claimant's knee pain and obesity with neuropathy would also present problems and Dr. Clifford noting frequent limitation in this regard is more persuasive than Dr. Hinchen who did not note any limitation for balancing. However, neither are sufficient to account for his overall status and he is therefore limited to only occasional balance. Regarding environmental factors, the claimant's asthma with obesity and non-severe OSA would call for additional precautions for [no] more than occasional exposure to humidity, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat.

R. 29-30. This is exactly the sort of discussion of obesity that is required. *See Summers*, 864 F.3d at 527-28. Regarding obesity (and overall), "the ALJ's careful consideration is shown by the fact that he departed from the RFC recommended by the state agency physicians who evaluated Plaintiff." *Tutwiler*, 87 F.4th at 859-60 (citation modified).

Notably, Plaintiff's own argument is deficient for the same reason he alleges the ALJ's analysis to be. Plaintiff describes the ways that obesity may affect a hypothetical claimant's ability to work but doesn't continue with the necessary step of describing how Plaintiff's obesity affects *his* ability to work. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (explaining that a claimant's showing of the existence of an impairment does not equate with a showing that the claimant suffers from common symptoms of that impairment without further evidence). "Thus,

even if the ALJ had erred in considering how [Plaintiff's] obesity affects [his] ability to work, that error would be harmless." *Shumaker v. Colvin*, 632 Fed. App'x 861, 868 (7th Cir. 2015) (unpublished); *see also Gedatus*, 994 F.3d at 905 (affirming the Commissioner's decision where the claimant "failed to show how her medically determinable impairments caused any limitations beyond those the ALJ found").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: April 9, 2026         By: _____

                                        Michael F. Iasparro
                                        United States Magistrate Judge